UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN DICKEN,

     Plaintiff,                    Civil Action No.: 20-10991
                                  Honorable George Caram Steeh

v.                              Magistrate Judge Elizabeth A. Stafford

JEREMY BUSH, et al.

     Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND**
**MOTION TO DISMISS [ECF No. NO. 17]**

## I.    Introduction

Shawn Dicken, a female inmate in the custody of the Michigan Department of Corrections (MDOC), sues Huron Valley Correctional Facility (WHV) correction officers Wellman and Westbrook, as well as Duane Waters Hospital (DWH) correction officer John Doe and Warden Bush under 42 U.S.C. § 1983, for violating her Eighth and Fourteenth Amendment Rights.  ECF No. 1.[1]  Defendants move for summary judgment

---

[1] The Honorable George Caram Steeh referred the case to the undersigned to resolve all pretrial matters under 28 U.S.C. § 636(b)(1). ECF No. 20.

and dismissal and briefing is complete.  ECF No. 17; ECF No. 18; ECF No. 19.  The Court recommends that defendants' motion for summary judgment and dismissal be denied.

## II.   Background

Dicken alleges in her complaint that, in November 2018, she travelled from WHV to DWH, escorted by Wellman and Westbrook, for a dental appointment.  ECF No. 1, ¶¶ 13, 15.  On arrival at DWH, Westbrook escorted two other WHV inmates to their medical appointments, leaving Wellman to accompany Dicken to her appointment.  *Id.*, ¶ 16.  Wellman escorted Dicken to the waiting room for the DWH dental office, but then left Dicken in the room unattended and unsupervised with inmate Travis Sells, who was imprisoned for third degree criminal sexual conduct.  *Id.*, ¶¶ 18, 20, 21.  Sitting about 10 feet from Dicken, Sells exposed his genitals and openly masturbated for around 30 minutes while staring at her.  *Id.,* ¶¶ 22, 23.  Dicken left the room for x-rays.  *Id.*, ¶24.  After she returned, Sells moved to within two feet of her and continued to masturbate while staring at her.  *Id.,* ¶¶ 24, 25.  Dicken reported the incident to Wellman when he returned to the waiting room 30 to 40 minutes after he had left.  *Id.*, ¶¶ 27, 28.

Dicken alleges that Wellman, Westbrook, Doe (who was supposed to supervise and monitor the DWH waiting room), and Bush were deliberately indifferent to her safety and discriminated against her based on her sex, in violation of her Eighth and Fourteenth Amendment rights.  Defendants assert that they are entitled to summary judgment because Dicken failed to exhaust her administrative remedies.  They also argue that Dicken's claims are barred under the Prisoner Litigation Reform Act (PLRA) because she cannot show a physical injury or the commission of a sexual act.  In addition, defendants contend that Dicken failed to allege adequate personal involvement by Westbrook and Bush for her Eighth Amendment claim, and by Wellman and Westbrook for the Fourteenth Amendment claim.  Finally, defendants argue Dicken's claims should be dismissed because they are protected by qualified immunity.

### III.   Analysis

### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that

show the lack of a genuine dispute as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id*. at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

A moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist*., 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden–the plaintiff on a claim for relief or the defendant on an affirmative defense–his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized repeatedly that the party with the burden of proof must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.  *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (internal quotations omitted).

4

**B.**

Defendants assert that Dicken failed to exhaust her administrative remedies under either the two-step grievance process for issues relating to prisoner sexual abuse or harassment under the Prison Rape Elimination Act (PREA), or under the MDOC's three-step general purpose process. They contend that Dicken filed only a Step I general purpose grievance related to the sexual harassment incident at DWH.  To support their heightened burden at summary judgment, defendants rely on the MDOC Prisoner Step III Grievance Report, showing no Step III Grievances filed under Dicken's name or prisoner number.  ECF No. 17-4, PageID.90. Defendants also rely on an affidavit from the grievance coordinator for WHV, which states that Dicken did not file a separate PREA grievance for this incident, and that she did not appeal the grievance to Step II.  ECF No. 17-5.

But Dicken counters that the MDOC PREA grievance process was unavailable to her, and that she tried to appeal her general-purpose grievance to Step III.  ECF No. 18; ECF No. 18-2.  In defendants' reply, they fault Dicken for failing to exhaust either the general-purpose or PREA grievance procedures.  ECF No. 19, PageID.145-146.  Defendants' argument ignores the duty of the grievance coordinator to ensure that

Dicken's claim of sexual harassment was forwarded to the PREA

coordinator.

> MDOC's general grievance policy directive states:

> Grievances filed regarding sexual abuse . . . shall not be
> processed as grievances under this policy but shall be reported
> in accordance with PD 03.03.140 "Prison Rape Elimination Act
> (PREA) and Prohibited Sexual Conduct Involving Prisoners."
> Any grievance submitted under this policy that contains an
> allegation of sexual abuse shall be copied by the Grievance
> Coordinator and forwarded to the PREA Coordinator. The
> original grievance shall be returned to the prisoner. If the
> grievance also includes a non-PREA grievable issue, it will
> need to be refiled by the prisoner.

MDOC PD 03.02.130 ¶ D.  Although this language speaks only of sexual

abuse, PREA requires MDOC to provide a mechanism for prisoners to

report (1) "sexual abuse and sexual harassment," (2) "retaliation by other

inmates or staff for reporting sexual abuse and sexual harassment," and (3)

"staff neglect or violation of responsibilities that may have contributed to

such incidents."  28 C.F.R. §115.51.  MDOC's 2017 PREA policy directive[2]

included allegations of "prisoner-on-prisoner sexual harassment," and

requires PREA investigators to "promptly, thoroughly and objectively"

investigate claims of sexual harassment.  MDOC PD 03.03.140 ¶¶ E, RR.

---

[2] MDOC's 2017 PREA policy directive is here:
https://www.michigan.gov/documents/corrections/03_03_140_559703_7.pdf

Because Dicken's allegations relate to prisoner sexual harassment, the PREA grievance process should have applied here.  MDOC PD 03.02.130 ¶ D; *Does 8-10*, 945 F.3d at 962.

Dicken filed her Step I grievance under the general grievance policy. ECF No. 17-5, PageID.96.  She described suffering a "sexual assault," during which a male inmate touched and exposed himself, after Wellman left her unprotected.  *Id*.  Given those allegations, MDOC's policies required the grievance coordinator to forward the grievance to the PREA coordinator.  MDOC PD 03.02.130 ¶ D.  Instead, Sgt. J. Krause declared the grievance resolved after an investigation that concluded that Dicken had never been left alone during her dental appointment.  ECF No. 17-5, PageID.93-94, 97.  And rather than recognizing her obligation to forward the grievance to the PREA coordinator, WHV's Grievance Coordinator Voncha Henderson wrongly faults Dicken for not initiating a separate PREA grievance.  *Id*., PageID.94.

Defendants do not deny that the PREA grievance procedure applied. They argue that summary judgment should be granted in their favor "without expressing an opinion as to which process was appropriate."  ECF No. 19, PageID.145.  Essentially, defendants contend that it was entirely Dicken's responsibility to decide which process was appropriate and

7

exhaust whichever she chose.  *Id*.  That is *not* what MDOC's policy says.  If the PREA policy applied, Henderson should not have processed it and the sergeant should not have found it resolved under the general grievance process.  MDOC PD 03.02.130 ¶ D.

Defendants' lack of position on which grievance procedure applies is also a problem because it lays a trap for the courts, which "generally treat inmate complaints in the same way as prison officials have treated them." *Does 8-10*, 945 F.3d at 962.  And it lays a trap for prisoners who seek to properly grieve claims of sexual abuse or harassment.

The Sixth Circuit recently held that "MDOC's PREA grievance process is, in practice, unavailable," excusing inmates from exhausting it. *Id*.  "[A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).  The *Does 8-10* court found the MDOC PREA grievance process so full of "contradictions and machinations" as to "render the process 'incapable of use.'" *Does 8-10*, 945 F.3d at 965.

Defendants point out *Does 8-10* addressed an earlier version of MDOC's PREA procedures, not the 2017 version that was applicable to

8

Dicken's claims.  But defendants do not identify how the 2017 version differs from the version discredited in *Does 8-10*, or if the 2017 version fixed the flaws of the 2016 policy identified by the court.  *See id*. at 963-965.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (internal quotations omitted).  And since *Does 8-10* was decided in 2019, the 2017 revision could not have been designed to fix the flaws identified in that decision.

Besides, the Court finds that MDOC's grievance policy as it relates to sexual abuse or harassment remained opaque when Dicken filed her grievance.  This conclusion is supported by (1) defendants' position that Dicken had to exhaust one of the procedures, but without defendants saying which one applies; (2) the grievance coordinator's decision to resolve the grievance instead of forwarding it to the PREA coordinator.  If MDOC cannot figure out which policy applies, how can Dicken be expected to do so?

What is more, defendants have failed to carry their burden of proof and persuasion on their claim that Dicken failed to exhaust the general-

purpose grievance procedure.  *See Mattox v. Edelman*, 851 F.3d 583, 589-590 (6th Cir. 2017).  In response to defendants' motion for summary judgment, counsel for Dickens supplied an affidavit under Rule 56(d), attesting to the need to pursue discovery regarding Dicken's stated efforts to appeal the Step I grievance she filed.  ECF No. 18-2.  "Where a motion for summary judgment is filed early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, a district court should fairly freely grant the relief authorized under Rule 56(d)."  *Fay v. Namou*, 19-CV-10902, 2020 WL 6780270, at *2 (E.D. Mich. Nov. 18, 2020) (internal quotations omitted).  Bare allegations or vague assertions of the need for discovery are not enough under Rule 56(d), but affidavits from counsel which "describe with some precision the materials it hopes to obtain with further discovery, and exactly how it expects those materials would help it in opposing summary judgment" suffice.  *Tossa v. Tardif*, 14-12319, 2015 WL 5679871, at *13 (E.D. Mich. Sept. 28, 2015) (internal marks omitted).

Counsel for Dicken explains in his affidavit that he expects that discovery will corroborate detailed assertions she made by email about her attempts exhaust her administrative remedies.  ECF No. 18-2, PageID.132-133, 136.  In her email, Dicken cites specific dates on which she allegedly

filed Step II and Step III grievances, and she includes grievance numbers. *Id*, PageID.136.  She wrote, "I've never received a response on my step 3 and was denied at step 2."  *Id*.  The Court finds that Dicken's request to pursue discovery "that may unearth evidentiary support for [her] position" is reasonable under the circumstances and appropriate under Rule 56(d). *Tossa,* 2015 WL 5679871, at *13; *Fay*, 2020 WL 6780270, at *2.

In their reply brief, defendants point out that Dicken said in her email to her attorney that she has copies of her Step II and Step III grievances, but she failed to include them in her response.  ECF No. 19, PageID.144. The Court does not know why Dicken's counsel had not secured copies of the grievances when filing the responsive brief, but notes that MDOC may have imposed greater restrictions on attorney-client communication because of the COVID-19 pandemic.  *See Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *6 (E.D. Mich. June 15, 2021); *Hill v. Michigan Dep't of Corr.*, No. 1:20-CV-1185, 2021 WL 1572829, at *1 (W.D. Mich. Apr. 22, 2021).

Regardless, Rule 56(d) does not create a burden for Dicken to prove that she exhausted her administrative remedies.  Instead, defendants bear the burden of persuasion and of presenting evidence that "no reasonable jury would be free to disbelieve."  *Does 8-10*, 945 F.3d at 961 (citation and

quotation marks omitted).  The Court must also consider whether Dicken made "affirmative efforts to comply with the administrative procedures and whether those efforts to exhaust were sufficient under the circumstances." *Id*. (citation and quotation marks omitted).  "A district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Id*.  Defendants here have failed here to satisfy their burden of showing that there is no genuine dispute of material fact about whether Dicken failed to exhaust.  In fact, a jury may question whether MDOC is at fault for failing to properly process Dicken's Step I grievance, and whether Dicken did indeed file Step II and Step III grievances.

## C.

A motion to dismiss under 12(b)(6) tests a complaint's legal sufficiency.  *See Mayer v. Mulod*, 988 F.2d 635, 638 (6th Cir. 1993).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.*  In deciding whether a plaintiff has set forth a "plausible" claim, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pleaded factual allegations. *Id*.  If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," the Court must dismiss it. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

### 1.

Defendants argue that the PLRA prohibits inmates from bringing a federal civil action for mental or emotional damages without a prior showing of a physical injury or physical sexual contact.  42 U.S.C. § 1997e(e).  They contend that because Dicken does not allege any physical contact occurred during the incident, this Court must dismiss her complaint.  ECF No. 17, PageID.53-55.

Under the PLRA, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." § 1997e(e).  A sexual act requires a touching or physical contact between two persons.  *See* 18 U.S.C. § 2246(2)(A)-(B).  But the

Sixth Circuit has clarified that § 1997e(e) does not bar claims for nominal or punitive damage, or injunctive or declarative relief, arising from constitutional injuries that involve no physical injury.  *Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020). The *Small* court also said that there is a "strong argument" for compensatory damages for Eighth Amendment violations, but declined to decide the issue without adversarial briefing or allowing the district court the opportunity to address the issue.  *Id*.; *see also Lucas v. Chalk*, 785 F. App'x 288, 292 (6th Cir. 2019) (suggesting that compensatory damages are available for Eighth Amendment violations).

Dicken argued that she may pursue compensatory damages for her constitutional injury, without an accompanying physical injury, citing *King v. Zamiara*, 788 F.3d 207, 213 (6th Cir. 2015).  The *King* court noted that § 1997e(e) "says nothing about claims brought to redress constitutional injuries, which are distinct from mental and emotional injuries." *Id.* Defendants argue that the *King* holding is very narrow, applying only to compensatory damages for constitutional injuries from First Amendment violations.  But as noted, *Small* and *Lucas* suggest otherwise.  Because Dicken seeks compensatory and punitive damages for her alleged Eighth Amendment injury, her claims are not barred by Section 1997e(e).

**2.**

Defendants argue that Dicken's Eighth Amendment claims against Bush and Westbrook should be dismissed because they do not allege enough personal involvement to be viable.  Defendants similarly argue that Dicken's Fourteenth Amendment claims against Westbrook and Wellman fail for lack of personal involvement.

To state a cognizable claim under Section 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also Pineda v. Hamilton County, Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (each defendant must be personally involved in the unconstitutional action).  Proximity to the wrongdoer does not convey responsibility.  *Id.*

Defendants assert that Westbrook was not personally involved with exposing Dicken to substantial harm because he left Dicken with Wellman upon arriving at the facility.  Dicken concedes that if discovery reveals that Wellman assumed sole responsibility for supervising Dicken once Westbrook departed, she will not oppose the dismissal of her Eighth Amendment claim against Westbrook.  ECF No. 18-1, PageID.124.  But Dicken's complaint does not raise a plausible claim that Westbrook had personal responsibility to supervise her or that he was deliberately

15

indifferent.  The complaint says that Wellman, not Westbrook, was tasked

with supervising her, and that Westbrook left her with Wellman while

Westbrook took two other inmates to their medical appointments.  ECF No.

1, PageID.2-3, 5.  These allegations fail to state a claim that Westbrook

acted with deliberate indifference; there is no plausible claim that he was

aware of facts from which he could infer that a substantial risk of serious

harm existed.  *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010).

Defendants also contend that, without alleging Bush's direct

knowledge of the events in the DWH waiting room, Dicken cannot establish

his personal involvement.  But a plaintiff may state a viable claim for

deliberate indifference by a warden by alleging that he abandoned specific

duties of his position, such as adopting and implementing PREA-compliant

procedures, and that his failure to carry out these duties resulted directly in

a violation of the plaintiff's Eighth Amendment right.  *See McCracken v.

Haas*, 324 F. Supp. 3d 939, 952 (E.D. Mich. 2018) (citing *Taylor v.

Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1995)).  Because

Dicken's complaint alleges just that, the Eighth Amendment claim against

Bush survives defendants' motion to dismiss.

Defendants similarly argue that Dicken has not adequately stated an

equal protection claim against Wellman and Westbrook because they

16

lacked personal involvement.  To state an equal protection claim, a plaintiff must allege that a state official intentionally discriminated against her because of her membership class.  *White v. Trapp*, 93 F. App'x 23, 27 (6th Cir. 2004); *Coleman v. Martin*, 363 F. Supp. 2d 894, 902 (E.D. Mich. 2005). A prisoner asserting a violation of equal protection rights must show that she was victimized because of some suspect classification.  *See Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992).

Dicken alleges that, as a female, she is a member of a protected class.  ECF No. 1, ¶ 58.  She alleges that the actions of all defendants placed her at risk for substantial harm because she was female, and that non-female prisoners were not subject to the same risks and treatment that she received.  *Id.*, ¶¶ 60, 63, 65. Dicken does not plausibly claim that Westbrook either created or implemented a policy that discriminated against her because of her sex; she claims that Westwood left her under Wellman's supervision.  *Id*., ¶ 16.  But she does allege facts supporting her claim that Wellman implemented a policy that ensured that females were disparately treated.  Id., ¶18, 20.  Thus, Dicken has stated facts supporting the personal involvement of Wellman for her equal protection claim, but the equal protection claim against Westbrook should be dismissed.

17

**3.**

Defendants also move for dismissal based on their claim of qualified immunity.  "Although a defendant's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Moderwell v. Cuyahoga County, Ohio*, 997 F.3d 653, 660 (6th Cir. 2021) (citation and quotation marks omitted).  With no factual development beyond the allegations in a complaint, a court cannot assess whether the facts of the case parallel a prior decision for determining whether a right is clearly established.  *Id.* at 660-661 (citing *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019).  Dismissal based on qualified immunity before discovery is generally premature and inappropriate.  *Wesley v. Campbell*, 779 F.3d 421, 434 (6th Cir. 2015).

Since there has been no factual development here, deciding defendants' qualified immunity arguments now would be premature.  And if defendants are arguing they are entitled to qualified immunity as a matter of law, the Court disagrees.  Qualified immunity applies when, viewing the evidence in a light most favorable to the plaintiff, the defendant did not violate a clearly established constitutional right.  *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005).  The Supreme Court has

warned courts "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citation and quotation marks omitted).  A case need not be directly on point to be clearly established, but existing precedent must give officials fair warning that the conduct at issue is unlawful.  *Id.* at 1152-53; *see also Taylor v. Riojas*, 141 S. Ct. 52 (2020) (holding that no reasonable officer could have concluded that conditions of confinement were constitutionally permissible under the extreme circumstances of the case despite no precedent with similar facts).

Defendants argue the Dicken's constitutional rights were not clearly established because she fails to identify a case with completely analogous facts.  ECF No. 17, PageID.62-63.  "But the Supreme Court does not require a case directly on point if existing precedent has placed the statutory or constitutional question beyond debate. Instead, the operative inquiry is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Rafferty v. Trumbull County, Ohio*, 915 F.3d 1087, 1097 (6th Cir. 2019) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) and *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (internal marks omitted)).

In *Rafferty*, the Sixth Circuit noted that, at least by 2014, it has been clearly established that ignoring known risks of harm to an inmate due to

abuse by another inmate could constitute deliberate indifference. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) and *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011)).  And prison official liability for failure to protect inmates from obvious dangers has also long been clearly established.  *Farmer*, 511 U.S. at 842-843.  Failing to protect inmates from a substantial risk of harm, based on either the obvious vulnerability of an at-risk inmate or the obvious threat posed by a predatory one, amounts to deliberate indifference violative of the Eighth Amendment.  *See Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).  Even before *Farmer*, "failure to segregate violent inmates from non-violent inmates constituted deliberate indifference, violating the Eighth Amendment where there is a pervasive risk of harm or where victim belonged to an identifiable group of prisoners for whom risk of assault is a serious problem of substantial dimension." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 815 (6th Cir. 1996) (internal quotation and marks omitted).

The *Greene* case is especially instructive here.  The plaintiff, a medium-security, male-to-female transgender inmate who displayed female characteristics and a feminine demeanor, was in a protective custody unit because her appearance made her vulnerable to serious harm from male inmates.  *Greene*, 361 F.3d at 294.  Prison officials placed a maximum-

security, male inmate known to be a "predatory inmate" in the same protective custody unit. *Id.* at 292. The court found that deliberate indifference to a substantial risk to Greene's safety could be established because of her known status as a vulnerable inmate **and** because of her assailant's known status as a predatory inmate. *Id.* at 295.

Dicken's allegations are similar. She alleges that defendants was were deliberately indifferent to a substantial risk to her safety when they left her unattended in a facility for male inmates, and specifically in a room with a sex offender. A reasonable prison official would have known that it was unlawful to leave a female inmate alone and unattended with a man convicted of sexual assault. Thus, construing the alleged facts in a light most favorable to Dicken, the alleged actions or inactions violated Eighth Amendment rights clearly established at the time of the relevant incident. Likewise, "[t]he law is clearly established that a prison official may not . . . treat [inmates] differently based on their membership in a protected class." *White*, 93 F. App'x at 28.

The Court cannot conclude that defendants are entitled to qualified immunity as a matter of law.

## IV.    Conclusion

The Court **RECOMMENDS** that defendants' motion for summary judgment and motion to dismiss, ECF No. 17, be **GRANTED IN PART AND DENIED IN PART**.  Dicken's claims against Westbrook should be **DISMISSED**, but her remaining claims against all other defendants should survive.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: August 23, 2021

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 23, 2021.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager